UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LORI WALTERS, in her individual capacity and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 5: 21-069-DCR ) |
| V. | ) ) |
| GILL INDUSTRIES, INC., et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Lori Walters claims that her former employer, Defendant Gill Industries, Inc., promised to pay her and other employees bonuses for work they performed while the company tried to find a buyer for its facility in Richmond, Kentucky. But Walters asserts that, after the company located a buyer and sold the facility, it failed to pay Walters and her co-workers pursuant to the agreement. Walters sued, alleging various claims including breach of contract, fraud, and Kentucky wage and hour violations. Walters subsequently amended her Complaint to add as defendants various subsidiaries, parent, and sister companies of Gill Industries, as well as Gill officers David DeGraaf, Gordon Schreur, and Alicia Masse.

The defendants have filed a motion to dismiss several of Walters' claims. The motion to dismiss the claims against Gill Corporation, GRM Automation Inc., Gill Real Estate Holdings Co., Gill Holding Company, Inc., Gill Acquisition Company, Gill Mexico Holdings, Inc., Gill Industries Disc, Inc., and Heron Industries, Inc. will be denied because Walters has sufficiently established that the Court has personal jurisdiction over the corporate defendants.

- 1 -

However, Walters has failed to state a claim upon which relief can be granted with respect to the individual defendants. As a result, the motion to dismiss will be granted with respect to the claims asserted against DeGraaf, Schreur, and Masse. Finally, the defendants' motion to dismiss Walter's Kentucky wage-and-hour claim will be granted because Walters failed to plead that she is an employee as defined in Chapter 337 of the Kentucky Revised Statutes.

## I.

Gill Industries, Inc. ("Gill Industries") operated a business in Richmond, Kentucky (the "Richmond Facility") that supplied component parts to automobile manufacturers. Facing financial difficulties in November 2019, the Gill umbrella of companies ("Gill") sought to either sell or wind down Gill Industries. As part of an effort to sell the Richmond Facility as a going concern, Gill Industries presented employees with an agreement ("Retention Agreement") under which it would provide incentive payments for employees' continued employment while Gill sought to sell the Richmond Facility.

Walters entered into a Retention Agreement on March 10, 2020. [Record No. 169-2] It provides, in relevant part:

> **1.** **Retention Bonus.** The Recipient will be eligible to receive a bonus in the amount of $16,346 (sixteen thousand and three hundred and forty-six dollars), less applicable withholdings and deductions and subject to the payment conditions of Section 2 below (the "Retention Bonus"), if the Recipient remains continuously and actively employed until the earlier of the following ("Payment Event"):
>     a.    The Recipient's involuntary termination of employment for any reason other than for Cause (as defined below); or
>     b.    December 31, 2020.
> **2.** **Unpaid PTO.** During the normal course of employment, the Recipient is entitled to receive Paid Time Off ("PTO"). To the extent the Recipient has not taken PTO because of job responsibilities, the unused PTO will be added to the Final Retention Bonus Payment. . . .
>     . . . .

> 4. **Payment of the Retention Bonus.** If the Recipient is entitled to receive the Retention Bonus, it will be paid as follows:
> a. fifteen percent (15%) of the Retention Bonus shall be paid on the next scheduled payroll after May 31, 2020;
> b. fifteen percent (15%) of the Retention Bonus shall be paid on the next scheduled payroll after August 31, 2020;
> c. the remainder of the Retention Bonus ("the Final Retention Bonus Payment") plus any unused PTO shall be paid upon a Payment Event on the next scheduled payroll after expiration of the waiver period of the Waiver and Release Agreement.

Gill ultimately sold the Richmond Facility to Challenge in early 2020 but did not make any payments to employees under the Retention Agreement.

Walters filed a Complaint in Madison Circuit Court on January 22, 2021, on behalf of herself and a proposed class of plaintiffs defined as "any and all current and former employees of the Defendant who entered in a Retention Agreement with Gill Industries, Inc., and who were and are citizens of the Commonwealth of Kentucky." Walters alleged claims of fraud and fraud in the inducement, breach of contract, violation of K.R.S. § 337.385, unjust enrichment, and negligent misrepresentation. [Record No. 1-1]

Gill Industries removed the matter to this Court on March 10, 2021, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Walters was permitted to file an Amended Complaint on August 30, 2021. [Record No. 64] Through that amendment, she added several defendants within the Gill corporate structure, including: Gill Corporation, GRM Automation Inc., Gill Real Estate Holdings Co., Gill Holding Company, Inc., Gill Acquisition Company, Gill Mexico Holdings, Inc., Gill Industries Disc, Inc., and Heron Industries, Inc. She also added as defendants Alicia Masse, in her capacity as president of all corporate defendants; David DeGraaf, in his capacity as president of all corporate defendants; and Gordon Schreur, in his capacity as treasurer of Gill Corporation GRM Automation, Inc., Gill Holding Company,

Inc., Gill Acquisition Company, Gill Mexico Holdings, Inc., Gill Industries Disc, Inc., and Heron Industries, Inc. Walters also included claims for civil conspiracy and joint enterprise.

The defendants filed a motion to dismiss on October 14, 2021, arguing that: the Court does not have personal jurisdiction over Defendants GRM Automation, Inc., Gill Real Estate Holdings Co., Gill Holding Company, Inc., Gill Acquisition Company, Gill Mexico Holdings Inc., Gill Industries Disc, Inc. and Heron Industries, Inc. ("the Corporate Defendants"); Walters has failed to state a claim upon which relief can be granted with respect to Defendants Schreur, Masse, and DeGraaf ("the Individual Defendants"); and the Court lacks subject matter jurisdiction with respect to Walters' K.R.S. § 337.385 claims against all defendants. Each argument is considered below.

## II.

### Personal Jurisdiction Over Corporate Defendants

The plaintiff has the burden to establish that the Court has personal jurisdiction over the defendants. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The issue sometimes may be resolved solely on the basis of written materials, in which case the plaintiff is only required to make a prima facie case of jurisdiction. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988). Notably, "the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Theunissen*, 935 F.2d at 1459. If the Court concludes that the parties' written submissions have raised "issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing." *Am. Greetings Corp.*, 839 F.2d at 1169.

A federal court sitting in diversity may exercise jurisdiction over a defendant only if a court in the forum state could do so. Accordingly, the Court may exercise jurisdiction over

the defendants only if jurisdiction is proper under the Due Process Clause of the United States Constitution and Kentucky's long-arm statute. *See Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). However, the plaintiff does not contend that this Court has personal jurisdiction over GRM Automation, Inc., Gill Real Estate Holdings Co., Gill Holding Company, Inc., Gill Acquisition Company, Gill Mexico Holdings Inc., Gill Industries Disc, Inc. and Heron Industries, Inc. based on those entities' contacts with Kentucky. Instead, she asserts that the contacts of Gill Industries and Gill Corporation (which do not contest personal jurisdiction) should be imputed to the remaining Corporate Defendants based on an alter ego theory.

The Sixth Circuit has endorsed the use of such a theory to exercise personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 362 (6th Cir. 2008). But under Kentucky law, Walters must demonstrate two elements to establish applicability of this doctrine: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Pro Tanks Leasing v. Midwest Propane & Refined Fuels, LLC*, 988 F. Supp. 2d 772, 784-85 (W.D. Ky. Dec. 18, 2013) (quoting *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 165 (Ky. 2012)).

The Supreme Court of Kentucky has identified a number of factors to examine in determining whether there is a loss of corporate separateness such that the court should pierce the corporate veil. *See Inter-Tel Techs*, 360 S.W.3d at 155. They include:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the

operation of the dominant stockholders.  a) Does the parent own all or most of the stock of the subsidiary?  b) Do the parent and subsidiary corporations have common directors or officers?   c) Does the parent corporation finance the subsidiary?  d) Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?  e) Does the subsidiary have grossly inadequate capital?   f) Does the parent pay the salaries and other expenses or losses of the subsidiary?  g) Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?  h) Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?  i) Does the parent use the property of the subsidiary as its own?  j) Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?  k) Are the formal legal requirements of the subsidiary not observed?

The most important factors are "grossly inadequate capitalization, egregious failure to observe legal formalities and disregarding of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, especially those of a day-to-day nature." *Id.*

Many of these factors weigh in favor of disregarding the corporate form with respect to all Corporate Defendants.  Gill Holding Company, Inc. is the 100 percent owner of all other Corporate Defendants, including Gill Industries, Inc.  [Record No. 118, p. 8]  Gill Holding Company, Inc. sits at the top of Gill's corporate hierarchy, with sister companies Gill Industries, Inc., GRM Automation, Inc., Gill Acquisition Co., Gill Real Estate Holdings Co., and Heron Industries, Inc. sitting "one step below."  Defendants Gill Mexico Holdings, Inc., Gill Corporation, and Gill Industries Disc, Inc. are 100-percent-owned subsidiaries of Defendant Gill Industries, Inc.  Gill Industries and the other Corporate Defendants shared the same president, treasurer, and secretary in 2019, 2020, and 2021.

David DeGraaf was president of the Gill entities. When asked which corporate entity employed him, he "assumed that would be Gill Corporation." [Record No. 118-3, p. 32] He received paychecks on a bi-weekly basis, but did not know which entity issued his paychecks. The voting members of the Board of Gill Corporation were Rita Woodruff, Mary Gill Thornton, and Joe Gill—all family members affiliated with the company. When asked who made up the board of directors of Gill Holding Company, Inc., DeGraaf stated, "there's only one board, to my knowledge, and those were the people that I just mentioned to cover all the entities of Gill. . . . We were managing all of the entities within that tree." *Id.* p. 36.

Gordon Schreur was the chief financial officer of Gill Holding Company and its subsidiaries from February 2018 to October 2020. [Record No. 118-4, p. 25] Schreur identified his employer as Gill Holding Company, Inc. and all of its subsidiaries—he believed DeGraaf's employer was the same. He reported that, prior to Gill's financial troubles in November 2019, none of the entities had a main operating account. Instead, Gill had an account at Huntington National Bank and receipts from Gill's various facilities swept against Gill's revolving line of credit. The terms of the agreement identified Gill Holding Company, Inc., Gill Industries, Inc., Gill Corporation, GRM Automation, Inc., and Gill Real Estate Holdings, Co. as the "Borrowers" and Gill Acquisition Company and Heron Industries, Inc., among others, as "Loan Parties."

In November 2019, Gill began to "ring fence" Richmond and other facilities so that their debts would not be paid out of the central revolving line of credit. Schreur explained that, by that point, customers sometimes had to fund the operations of the plant. *Id.* at 17. According to Schreur, the ring fencing was in contemplation of either a sale or wind-down and

was done to make sure that customers were only funding the plants with which they did business. *Id.* at 22.

Alicia Masse was appointed chief restructuring officer after Huntington National Bank reached out to her in February 2019, saying they had a company that needed a viability analysis. [Record No. 118-5] When asked whether the viability analysis was limited to Gill Industries, Masse stated: "[T]hat's always a hard question to answer because Gill had a lot of different subsidiaries. . . . [T]he only one that really stuck out as separate would have been the Ireland subsidiary. Everything else really rolled up into Gill Industries and was part of . . . the Huntington loan documents." *Id.* 27. Masse was paid hourly but was not sure which entity paid her. She did not separate the hours worked per facility.

The Corporate Defendants' responses to interrogatories lend additional support to the plaintiff's allegation that they lack corporate separateness, for purposes of personal jurisdiction. Gill Acquisition Company was used to purchase a group of businesses in 2014 which included the Richmond Facility. The production assets were transferred to Gill Corporation and GRM Automation sometime in 2015 or 2016. [Record No. 157-1, p. 6] The real estate was transferred to Gill Real Estate Holdings Co. [Record No. 157-7] While it charged rent for the use of this real estate, the "[c]harges were recorded intercompany and on a consolidated basis [and] netted to zero." Gill Holding Company, Inc. has no day-to-day business activities. Instead, it is simply a holding company that owns other Gill entities. [Record No. 157-11] The remaining Corporate Defendants, with the exception of GRM Automation, also had no day-to-day operations.

With respect to finances, the Corporate Defendants mainly relied upon the central Gill Holding Company account and revolving line of credit at Huntington National Bank. Only

Gill Holding Company and GRM Automation had accounts separate from the central account. And GRM Automation was the only corporate entity that generated revenue and had any employees other than Schreur and DeGraaf.

DeGraaf testified at his deposition that Gill Corporation operated as if Gill Holding Co. and Gill Corporation were the same business. With respect to Gill Acquisition Company, DeGraaf stated, "[w]e never had any specific meetings. . . . We didn't conduct any acquisitions." DeGraaf additionally testified that Gill Mexico Holdings, Inc. was conducted as if it was the same corporation as "the Gill entity." [Record No. 118-3, p. 39] According to DeGraaf, Gill Industries Disc, Inc. also was conducted as the same business entity as Gill Corporation and had no separate business functions. DeGraaf testified that Heron Industries also was conducted as the same business as the other Gill entities.

GRM Automation built and performed maintenance on tools used by Gill Industries and Gill Corporation, as well as outside customers. [Record No. 157-4] It had employees in Comstock Park, Michigan, and generated revenue during 2019-2020. GRM Automation maintained three accounts at Huntington National Bank in addition to being a party to the overall Gill Holding Company loans and revolving line of credit. GRM Automation drew from the revolving line of credit and shared payroll and accounts payable staff with Gill Industries. DeGraaf testified that GRM Automation, Inc. was operated as if it was part of Gill Corporation and did not have any separate existence. [Record No. 118-3, p. 38]

None of the entities held meetings separate from any other Gill entity. All Gill entities shared one website, Gill-industries.com, and all employees had the same domain name for their email addresses, ending in "gill-industries.com." Schreur stated that "corporate" did

payroll for all of the employees at all of the plants. Additionally, approval for vendors would have to go through the corporate office. [Record No. 118-4, p. 27]

Construing the undisputed facts in the light most favorable to Walters, the Court concludes that the Corporate Defendants (including Gill Industries, Inc.) are one and the same for purposes of assessing personal jurisdiction. All Corporate Defendants shared the same officers and owners during the relevant time period. Prior to the end of 2019, all Corporate Defendants shared an account at Huntington National Bank from which salaries and wages for all employees were drawn. President DeGraaf "assumed" his employer was Gill Corporation and believed that the companies under the Gill umbrella operated as if they were the same business. Masse, who became DeGraaf's superior after her appointment, only recognized Gill's Ireland subsidiary as separate, stating that everything else "rolled up into Gill Industries" and was part of the Huntington Bank loan.

While GRM Automation bears some attributes of a separate corporate entity (e.g., outside customers, its own bank accounts, revenue), countervailing considerations outweigh them. Notably, GRM Automation operated out of the Gill central account and its president believed that it had no separate existence from Gill Corporation.

Piercing the corporate veil is appropriate when the Court looks at the *Inter-Tel Techs* factors. While "grossly inadequate capitalization" is not necessarily at issue, it is clear that the corporate defendants' funds were commingled and that the various entities relied on funding from Gill's central account. Further, there is no indication that any legal formalities were observed, as all entities shared common officers and did not have meetings or any other formalities that would distinguish one entity from another. Even the president of the company

expressed doubt regarding the identity of his employer and, for the most part, stated that all of the companies were one in the same.

Walters also has made a sufficient showing that continued recognition of the individual corporations would sanction fraud or promote injustice. Defendant Schreur's deposition testimony indicates that Gill "ring fenced" Gill Industries' finances around the same time that the Richmond employees signed the Agreements. While the defendants contend there is an innocent explanation for this, Walters asserts the defendants did so to divert money away from Gill Industries and deny her and the putative class members a recovery.

The Supreme Court of Kentucky has adopted the following test to determine whether recognizing corporations separately would lead to fraud or promote injustice:

> [C]ourts that properly have pierced corporate veils to avoid promoting injustice have found that, unless it did so, some wrong beyond a creditor's inability to collect would result: the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful.

*Inter-Tel*, 360 S.W.3d at 164-65 (quoting *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 522-24 (7th Cir. 1991)). Injustice must be something more than the mere inability to collect a debt from the corporation. *Inter-Tel*, 360 S.W.3d at 164. Here, Walters contends that the defendants intentionally restructured their bank accounts so that Gill Industries, Inc. would not have funds to pay its employees under the Retention Agreement. Construing the record in the light most favorable to Walters, the continued recognition of separate entities would promote injustice. Accordingly, the portion of the defendants' motion to dismiss based on lack of personal jurisdiction will be denied.

### III. Claims Against Individual Defendants

The defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." The Court primarily considers the allegations in the complaint, but also may consider matters of public record, orders, items appearing in the record, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

#### A. Breach of Contract

The defendants contend that the breach of contract claims against DeGraaf and Masse should be dismissed because they were not parties to the Retention Agreement. The Agreement was "made by and between Gill Industries, Inc." and "the undersigned individual." [Record No. 150-2] "David W. DeGraaf, President" and "Alicia Masse, CRO" signed on behalf of "COMPANY-GILL" and it appears that Walters signed on her own behalf. *Id.* The defendants assert that DeGraaf and Masse signed the Agreement in their capacities as agents and therefore are not liable for any alleged breach of the Agreement. They further contend that the breach of contract claim against Schreur should be dismissed because he was not a party or an agent with respect to the Retention Agreement.

An agent acting within the scope of his or her employment in entering a contract is not liable for a subsequent breach of that contract. *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky.

- 12 -

1989). Walters does not dispute that DeGraaf, Masse, and Schreur were not parties to the Retention Agreement. Instead, she argues that the individual defendants can be held liable for breach of contract "under the alter ego theory of 'piercing the corporate veil.'" [Record No. 118, p. 18] While Walters alleged in her Amended Complaint that the corporate entities were alter egos of one another, she did not assert that the individual defendants were alter egos of the entities.[1]

Further, she has not pointed to any facts suggesting that DeGraaf, Masse, or Schreur were alter egos of any of the corporate entities. DeGraaf, Masse, and Schreur were high ranking employees, but Walters did not plead or otherwise explain how they controlled corporate decisions such that they were one and the same as the corporations that employed them. *See e.g., Johnson v. Diamond Shine, Inc.*, 890 F. Supp.2d 763, 773-74 (W.D. Ky. 2012) (quoting *Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) ("Ownership and control of a corporate entity by the persons sought to be held liable is . . . not sufficient by itself for denial of entity treatment.")). Accordingly, the breach of contract claims against DeGraaf, Schreur, and Masse will be dismissed.

### B. Fraudulent Misrepresentation or Fraud in the Inducement

Walters asserts that the Retention Agreement contains material representations which were false and known to be false by the defendants, or recklessly made by the defendants, and made with the inducement to be acted upon and in reliance by the proposed class of plaintiffs,

---

[1] Walters described each Corporate Defendant in detail and specifically alleged that it was an alter ego of Gill Industries, Inc. Walters' specific allegations concerning the Individual Defendants did *not* include allegations that they were alter egos of Gill Industries, Inc. or any other corporate entity. Later in the Amended Complaint, she made a generic allegation that the "Defendants" were alter egos of one another, but there are no facts suggesting that she intended this reference to include the Individual Defendants. [*See* Record No. 64, ¶ 19a.]

thereby causing them injury. Specifically, Walters alleges that the defendants represented that, if the proposed plaintiffs remained continuously and actively employed until the earlier of their involuntary termination of employment for any reason other than cause or December 31, 2020, then the proposed class plaintiffs would be paid the Retention Bonus and PTO as outlined in the Retention Agreement.

A party seeking to recover for fraudulent misrepresentation or fraud in the inducement must allege six elements: "1) material representation 2) which is false 3) known to be false or made recklessly 4) made with inducement to be acted upon 5) acted in reliance thereon and 6) causing injury." *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 613 (Ky. Ct. App. 2011); *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). Additionally, the plaintiff's reliance on the material representation must be reasonable. *Flegles*, 289 S.W.3d at 549.

The defendants contend that Walters' fraud and fraud in the inducement claims against the individual defendants should be dismissed because they are based on representations made within the Retention Agreement. As explained above (and as Walters apparently concedes), the individual defendants were not parties to the Retention Agreement. Walters responds that the claims are based on the individual defendants' duty not to supply false information or make material misrepresentations, which is independent of any contractual duties.

Claims of negligent and fraudulent misrepresentation must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247-48 (6th Cir. 2012)). This standard requires the plaintiff to specify the allegedly fraudulent statements, identify the speaker, plead when and where the statements were made; and to explain what made the

statements fraudulent. *Id.* Walters has not identified the fraudulent statements that any of the individual defendants allegedly made. Instead, the Amended Complaint relies solely upon the alleged "fraudulent misrepresentations made by the Defendant Gill Industries, Inc." that were included in the Retention Agreement. Accordingly, the fraudulent inducement and fraudulent misrepresentation claims against the DeGraaf, Schreur, and Masse will be dismissed.

### C. Negligent Misrepresentation

Walters claims that the Defendants "supplied false information to the Proposed Class Plaintiffs that they would receive the amounts proposed by the Retention Agreement." [Record No. 64, ¶ 65] The individual defendants contend that the negligent misrepresentation claims asserted against them should be dismissed because Walters has not alleged any misrepresentation.

Kentucky has adopted the Restatement (Second) of Torts definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justified reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Generally, § 522 involves negligent supply of commercial information to others for guidance in their business transactions. Plaintiffs must identify the false or misleading information provided by the specific defendant. *Estate of DeMoss by and through DeMoss v. Eli Lilly & Co.*, 234 F. Supp.3d 873, 883 (W.D. Ky. 2017) (citing *Gaunce v. CL Med. Inc.*, 2015 WL 893569 (E.D. Ky. Mar. 2, 2015) and *Giddings & Lewis, Inc. v. Industrial Risk Ins.*, 348 S.W.3d 729 (Ky. 2011)).

As explained previously, plaintiffs alleging negligent misrepresentation under Kentucky law must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.* (citing *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247-48 (6th Cir. 2012)). Walters asserts that the defendants falsely represented to the plaintiffs that "they would receive the amounts proposed by the Retention Agreements." [Record No. 118, p. 20] While Walters reports that this misrepresentation is included in the terms of the Retention Agreement, she does not seriously contend that DeGraaf, Masse, or Schreur are parties to that agreement. And she has not identified any other specific misrepresentations that that the individual defendants allegedly made to her or any other proposed class member. Accordingly, the negligent misrepresentation claims against DeGraaf, Schreur, and Masse will be dismissed.

### D. Unjust Enrichment

Walters asserts an unadorned claim for unjust enrichment. To recover on a claim of unjust enrichment, the plaintiff must establish that there was (1) a benefit conferred upon the defendant at the plaintiff's expense; (2) a resulting appreciation of benefit by the defendant; and (3) inequitable retention of that benefit without payment for its value. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017). The individual defendants contend that this claim should be dismissed with respect to them because Walters has failed to allege that they received a benefit from her continued employment.

While the individual defendants were high-level corporate employees, Walters does not allege that they were her employers and she does not point to any facts indicating that they benefited from her continued employment. Walters apparently has no answer to this persuasive argument, which was raised in the defendants' motion to dismiss, as she failed to

acknowledge it in her response.[2] [*See* Record No. 118, pp. 19-20.] Accordingly, the motion to dismiss the unjust enrichment claims against the DeGraaf, Schreur, and Masse will be granted.

### E.     Civil Conspiracy

Civil conspiracy is "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. Of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)). The defendants correctly observe that civil conspiracy is not a free-standing claim and merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort. *Dickson v. Shook*, 2019 WL 1412497, at *18 (Ky. Ct. App. Mar. 29, 2019) (citing *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. 1945)). Because all of the underlying tort claims against the individual defendants are being dismissed, so shall the claim of civil conspiracy.

### IV.     Claims Under K.R.S. § 337.385

Walters alleges that Gill Industries, Inc. violated K.R.S. § 377.385 by failing to pay wages to which she and the proposed class members were entitled under Kentucky Wage and Hour laws, including bonuses and paid time off as promised in the Retention Agreement.

---

[2]     Walters instead focuses on the defendants' less compelling argument that unjust enrichment is not available when the terms of an express contract control. *See Furlong Dev. Co., LLC v. Georgetown-Scott Cnty. Planning & Zoning Comm.*, 504 S.W.3d 34, 40 (Ky. 2016). However, whether "the terms of an express contract control" is not before the Court at the motion to dismiss stage. Further, the Court already determined that the individual defendants are not parties to the Retention Agreement and, therefore, an express contract does not control—at least with respect to those defendants.

However, an action under § 377.385 may only be sustained by an "employee" as defined in K.R.S. § 337.010(2)(a). Notably, an employee does not include "any individual employed in a bona fide executive, administrative, supervisory, or professional capacity." *Id.*

The defendants contend that, as Controller of the Richmond Facility, Walters was a professional employee and, therefore, the claim under § 337.385 should be dismissed.[3] [Record No. 86-2, p. 19] In response to the motion to dismiss, Walters disputes this assertion, arguing that she mostly aggregated information at the request of others and made no decisions on her own regarding the running of the plant or its finances. [Record No. 118, p. 23] Walters' Complaint and Amended Complaint indicate that she is a former employee of Gill Industries, but provide no details concerning the type of business Gill performed, her position, or the nature of her employment. The plaintiff has the burden of establishing that she is a non-exempt employee. *Jacobs v. Floorco Enters., LLC*, 2018 WL 6028709, at *3 (W.D. Ky. Nov. 16, 2018) (citing *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 94 (Ky. 2006)).

On a motion to dismiss, the Court examines the sufficiency of the pleadings. While Walters is not required to conclusively establish her employee status in the complaint, she must at least provide some facts from which the Court could conclude that she is a non-exempt employee. *See id.* at *4 (citing *Burton v. Appriss, Inc.*, 2013 WL 6097107 (W.D. Ky. Nov. 19,

---

[3] The defendants frame this as a motion to dismiss based on lack of subject matter jurisdiction in the introductory paragraph of the memorandum in support of their motion to dismiss. [Record No. 86-2] When a statutory right is being pursued and the defense raised is that the plaintiff does not come within the purview of the statute, "it makes little difference whether Rule 12(b)(1) or Rule 12(b)(6) is the vehicle used to raise the issue as long as the non-moving party is not taken by surprise and has an adequate opportunity to respond." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986).

2013) (court denied motion defendant's 12(b)(6) motion because plaintiff had alleged sufficient facts such that it was unclear whether he was a non-exempt employee). *See also Goodwin v. Novartis Pharm. Corp.*, 2012 WL 1079086, at *6 (W.D. Ky. Mar. 30, 2012).

Walters encourages the Court to conflate the defendants' motion to dismiss this claim with the question of class certification, but whether Walters has pled sufficient facts to make out her individual claim for a violation of K.R.S. § 377.385 is a separate inquiry. Despite having the opportunity to do so through the filing of an Amended Complaint, Walters did not provide any details concerning her employment with Gill that would allow the Court to infer that she was an "employee" as defined under § 337.010(2)(a). Accordingly, this claim will be dismissed with respect to all defendants.

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Defendants' motion to dismiss [Record No. 86] is **GRANTED**, in part, and **DENIED**, in part.

2. All claims asserted against David DeGraaf, Gordon Schreur, and Alicia Masse are **DISMISSED**.

3. Plaintiff Walters' claim asserted under K.R.S. § 337.385 is **DISMISSED** with respect to all defendants.

Dated: January 10, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky